LARSON & ZIRZOW, LLC
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
E-mail: zlarson@lzlawnv.com
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
E-mail: mzirzow@lzlawnv.com
810 S. Casino Center Blvd. #101
Las Vegas, Nevada 89101
Telephone: (702) 382-1170
Fascimile: (702) 382-1169

Counsel for Debtor, Amy Tarkanian

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| In re: | Case No.: BK-S-13-20495-MKN |
|---|---|
| DANIEL GEORGE JOHN TARKANIAN and AMY MICHELLE TARKANIAN | Chapter 7 |
| Debtor. | Evidentiary Hearing:<br>Date: May 1, 2014<br>Time: 9:30 a.m. |

### TRIAL BRIEF OF DEBTOR, AMY TARKANIAN, IN SUPPORT OF ALLOWANCE OF HOMESTEAD EXEMPTION

Debtor, Amy Tarkanian (the "Debtor"), by and through her counsel, the law firm of Larson & Zirzow, LLC, hereby submits her trial brief in conjunction with the evidentiary hearing on the objection (the "Objection") filed by the Federal Deposit Insurance Corporation as Receiver for La Jolla Bank, FSB (the "FDIC-R") to her claim of a homestead exemption with her spouse, Daniel Tarkanian (collectively with Debtor, the "Debtors") in the above-captioned bankruptcy case.

Debtor hereby incorporates the legal arguments raised in Debtors' original joint opposition (the "Opposition") [ECF No. 69][1] to the FDIC-R's Objection to her claimed homestead [ECF Nos. 40, 41, 43, 44, 46, and 75], as well as any additional legal arguments raised in any trial brief that her spouse may file herein. Debtor also joins in the statements of fact in Debtors' Opposition and any trial brief her spouse may file herein; provided, however, that, as the evidence will show, she

---
[1] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as set forth in the Opposition.

has no personal knowledge of or participation in any of the specific transactions alleged to be at issue by the FDIC-R.

**A.      The FDIC-R Has the Burdens of Both Initial Production and Ultimate Persuasion.**

1.      As the party objecting to Debtors' homestead exemption, the FDIC-R has the burden of proving that the exemption was not properly claimed. See Fed. R. Bankr. P. 4003(c).

2.      A claimed exemption is "presumptively valid," and thus the party objecting to the claimed exemption has both the initial burden of production and the ultimate burden of persuasion. Carter v. Anderson (In re Carter), 182 F.3d 1027, 1029 n.3 (9th Cir. 1999); Todd v. Whinery, No. 2:12-cv-01841, 2013 WL 3285525, at *2 (D. Nev. June 26, 2013); Diener v. McBeth (In re Diener), 483 B.R. 196, 203 (B.A.P. 9th Cir. 2012); In re Thompson, 336 B.R. 800, 803 (Bankr. D. Nev. 2005). If the objecting party produces evidence to rebut the presumptively valid exemption, the burden of production then shifts to the debtor to go forward with evidence to demonstrate the exemption is proper. Carter, 182 F.3d at 1029 n.3 (citation omitted). The ultimate burden of persuasion, however, always remains with the objecting party. Id.

3.      The appropriate standard of proof that the party objecting to an exemption must satisfy is a preponderance of the evidence. Todd, 2013 WL 3285525, at *2 (citing Kelley v. Locke (In re Kelley), 300 B.R. 11, 17 (B.A.P. 9th Cir. 2003)); Tyner v. Nicholson (In re Nicholson), 435 B.R. 622, 631 (B.A.P. 9th Cir. 2010) (citing Grogan v. Garner, 498 U.S. 279 (1991) (reviewing an exemption claimed in bad faith)); In re Lacounte, 342 B.R. 809, 813 (Bankr. D. Mont. 2005) (holding that an action brought pursuant to section 522(o) of the Bankruptcy Code must be proven by a preponderance of the evidence).

**B.      The Dual Application of Federal and State Law Limits on Exemptions.**

4.      "Bankruptcy courts have long tolerated exemption planning—the strategic transmutation of nonexempt assets into exempt assets." In re Stanton, 457 B.R. 80, 91 (Bankr. D. Nev. 2011). "As stated in the legislative history to the 1978 Code: 'As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. The practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled under the law.'" Id. (quoting H.R. Rep. No. 595

95th Cong., 1st Sess. 361 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 76), and citing Gill v. Stern (In re Stern), 317 F.3d 1111, 1115 (9th Cir. 2003) ("'the purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy is not fraudulent per se.'") (quoting Wudrick v. Clements, 451 F.2d 988, 989 (9th Cir. 1971)); see also Wolkowitz v. Beverly (In re Beverly, 374 B.R. 221 (B.A.P. 9th Cir. 2007) (noting that the Bankruptcy Code "preserved the judge-made exemption planning doctrine forged under the Bankruptcy Act"). "There have, of course, always been limits. These limits, however, were judicially imposed, rather than imposed by statute. This changed when Congress added section 522(o) to the Bankruptcy Code." Stanton, 457 B.R. at 91.

5. Interestingly, the FDIC-R did not cite to section 522(o) of the Bankruptcy Code in its original objection, but rather only in its reply, and only after the statute was referenced in Debtors' Opposition. Instead, the FDIC-R's original objection only relied on Nevada state law—in particular, the decision by the Nevada Supreme Court in Maki v. Chong, 75 P.3d 376 (Nev. 2003) (per curiam)—as the specific basis on which Debtors' homestead exemption should be denied.

6. Section 522(o) of the Bankruptcy Code, however, "considers as a question of federal law the effect of a fraud on a state homestead exemption." 4 Collier on Bankruptcy ¶ 522.08[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (emphasis added).

7. As was very recently stated by the United States Supreme Court, "[t]he Code's meticulous—not to say mindnumbingly detailed—enumeration of exemptions and exceptions to those exemptions confirms that courts are not authorized to create additional exceptions." Law v. Siegel, 134 S. Ct. 1188, 1196 (2014) (reversing a decision of the Ninth Circuit allowing a surcharge of a debtor's homestead exemption). Immediately after the foregoing quoted text, as well as after referencing section 522(o) of the Bankruptcy Code, however, the Supreme Court noted that "when a debtor claims a state-created exemption, the exemption's scope is determined by state law, which may provide that certain types of debtor misconduct warrant denial of the exemption." 134 S. Ct. at 1196-97 (citing cases). Further, the Supreme Court noted that there may exist "instances in which federal courts applied state law to disallow state-created exemptions . . . [b]ut federal law provides no authority to deny an exemption on a ground not specified in the Code." Id. at 1197

3

(citing cases). As such, it would appear that a creditor objecting to a debtor's claim of a homestead exemption provided under state law may seek to disallow the exemption pursuant to both applicable state exemption law and section 522(o) of the Bankruptcy Code. See Addison v. Seaver (In re Addison), 540 F.3d 805, 811 and nn.6 & 7 (8th Cir. 2008).

8.  An examination of both section 522(o) of the Bankruptcy Code and Nevada state law as potential limitations on an exemption claimed under Nevada state exemption law follows. As hereinafter explained, however, at least in Nevada, the application of both the federal limit in section 522(o) of the Bankruptcy Code and any limit imposed by Nevada state caselaw should not make much difference as a practical matter given the similarity of the inquiries.

C.  **Section 522(o) as a Federal Limitation on the Homestead Exemption.**

9.  Section 522 of the Bankruptcy Code provides, in pertinent part, as follows:

> (b)  (1)  Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Federal Rules of Bankruptcy Procedure, one debtor may not elect to exempt property listed in paragraph (2) and the other debtor elect to exempt property listed in paragraph (3) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (2), where such election is permitted under the law of the jurisdiction where the case is filed.
>
> (2)  Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize.
>
> (3)  Property listed in this paragraph is—
>
> (A)  subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located

in a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;

. . . .

(o)   For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in—

(1)   real or personal property that the debtor or a dependent of the debtor uses as a residence; . . . or

(4)   real or personal property that the debtor or a dependent of the debtor claims as a homestead;

shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

11 U.S.C. § 522.

10.   Section 522(o) of the Bankruptcy Code has four essential components. To prevail, an objecting party must show: "(a) an increase in the value of the debtor's homestead; (b) that the increase was 'attributable' to the disposition of nonexempt assets; (c) that the disposition of the nonexempt assets was made with the intent to hinder, delay, or defraud a creditor; and (d) that the disposition occurred during the ten-year period ending on the date the debtor's bankruptcy petition was filed." Stanton, 457 B.R. at 91. As applied in the case at hand, as hereinafter explained, the FDIC-R cannot satisfy either the second of third elements necessary to establish the limitation of Debtor's homestead exemption pursuant to section 522(o) of the Bankruptcy Code.

11.   As to the third element—whether the disposition of the nonexempt asset was made "with the intent to hinder, delay, or defraud a creditor"—numerous bankruptcy courts have looked to the body of case law construing fraudulent transfers pursuant to section 548(a)(1) of the Bankruptcy Code, and denial of discharge actions pursuant to section 727(a)(2) of the Bankruptcy Code due to the similar wording of those statutes in construing that same text in section 522(o) of the Bankruptcy Code. Stanton, 540 F.3d at 811 (collecting cases); see also Law, 134 S. Ct. at 1195

(noting the "normal rule of statutory construction that words repeated in different parts of the same statute generally have the same meaning") (quotations and citations omitted).

12. Courts can rely on circumstantial evidence of intent to determine the intent to hinder, delay or defraud, called "badges of fraud," to serve as indicia of transactions imbued with fraud. See Stanton, 457 B.R. at 92-93. NRS § 112.180(2)(a) contains the non-exclusive listing of the eleven (11) traditional badges of fraud found in the Uniform Fraudulent Transfer Act (the "UFTA"). Additionally, comment 5 to that section described that the list of the badges of fraud as "a nonexclusive catalogue of factors appropriate for consideration by the court in determining whether the debtor has an actual intent to hinder, delay, or defraud one of more creditors. Proof of the existence of any one or more of the factors . . . may be relevant evidence as to the debtor's actual intent but does not create a presumption that the debtor has made a fraudulent transfer or incurred a fraudulent obligation." Stanton, 457 B.R. at 93 (quoting UFTA § 4, cmt. 5).

13. The FDIC-R argues that Nevada law does not allow an exemption for "loan repayments," but this is sophistry. Debtor is obviously claiming a homestead exemption as that is the form in which the property was held as of their petition date. Indeed, the language of section 522(o) of the Bankruptcy Code requires the Court to look at whether the converted property could be exempted "if on such a date the debtor had held the property so disposed of." Since the phrase "on such date" must refer to the only other date specified in section 522(o) of the Bankruptcy Code, which is the date of the filing of the petition, it is thus the petition date that controls in determining whether the converted property could be exempted. See 5 Collier on Bankruptcy § 522.08[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). As such, the applicable exemption in question is undeniably the homestead exemption under Nevada state law, not whether "loan repayments" are exempt as the FDIC-R attempts to mischaracterize.

14. Section 522(o) of the Bankruptcy Code, however, does not alter the longstanding and well established rule that the conversion of nonexempt to exempt property, without more, is not fraudulent or improper. Unless the objecting party can deduce badges of fraud over and above this fact, an objection to a homestead exemption under section 522(o) of the Bankruptcy Code must fail. See Addison, 540 F.3d at 813-817 ("[f]or fraudulent intent to be found 'there must

appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of non-exempt assets into exempt and which are indicative of fraudulent purpose"); In re Agnew, 355 B.R. 387 (Bankr. D. Kan. 2006) (holding that debtor's acquisition of homestead property in exchange for transfer of nonexempt farm assets to mother's trust was done for legitimate estate planning purposes and not with intent to hinder, delay or defraud a creditor); see also In re Moore, 177 B.R. 437 (Bankr. N.D.N.Y. 1994) (holding that a Chapter 7 trustee did not demonstrate the existence of fraudulent intent on debtors' part and therefore purchase of annuity contract was not subject to avoidance as a fraudulent transfer, even though debtors, who were insolvent, converted all of their remaining nonexempt property into annuity 2 months before filing bankruptcy petition, where debtors' pre-bankruptcy planning was not accompanied by concealment or conduct calculated to mislead creditors and debtors clearly revealed their actions in their bankruptcy petition as well as at first meeting of creditors, and, further, debtor wife's age and medical condition support finding that conversion of nonexempt assets was prudent pre-bankruptcy planning and not done with intent to defraud creditors).

15. In Addison, the Eighth Circuit reversed a bankruptcy court's reduction of a debtor's homestead exemption pursuant to section 522(o) of the Bankruptcy Code because the creditor had failed to establish and/or the bankruptcy court had failed to find that the creditor established "extrinsic evidence of fraud." 540 F.3d at 813. Specifically, the Court reasoned that because of the four badges of fraud present in the case, three related solely to the conversion of nonexempt fund, which by itself is permissible, and the fourth badge was the fact that the debtor had been sued on a personal debt before making the mortgage payment, which is also not sufficient extrinsic evidence of intent to defraud, the Court reversed. Indeed, the Eighth Circuit held that the bankruptcy court's finding that the debtor's conversion of non-exempt assets into exempt assets was done with the intent "to keep value away from creditors" did not provide the requisite extrinsic evidence of fraud because such an intent should not be viewed as "automatically impermissible." Id. at 815. The Eighth Circuit's application of the law in Addison, and the cases cited therein, including Jensen v. Dietz (In re Sholdan), 217 F.3d 1006, 1008 (8th Cir. 2000), and Hanson v. First Nat'l Bank, 848 F.2d 866 (8th Cir. 1988), is substantially similar, if not the same, as that

articulated in Stern, Beverly and Stanton cases decided by the Ninth Circuit and lower courts therein as previously cited herein.

### D. Nevada State Caselaw as a Limitation on the Homestead Exemption.

16. The FDIC-R relies solely on the Nevada Supreme Court's decision in Maki in support of its asserted state law-based limitation on Debtor's claimed homestead exemption. In Maki, the plaintiff, a state prisoner, signed a limited power of attorney allowing the defendant to cash his worker's compensation settlement check so that the funds could be used to hire a criminal defense lawyer for the plaintiff. The defendant instead used the money to purchase a homes upon which she recorded a declaration of homestead. The plaintiff thereafter filed suit and obtained a default judgment against defendant, and thereafter attempted to execute upon the residential property.

17. In holding that the homestead exemption did not apply to the circumstances before it, the Nevada Supreme Court in Maki held as follows:

> There is a time-honored principle that states that he who keeps property that he knows belongs to another must restore that property. This idea, manifested in the doctrine of equitable liens, permeates our entire system of justice regarding equity. "[O]ne who has purchased real property with funds of another, under circumstances which ordinarily would entitle such other person to enforce a constructive trust in, or equitable lien against, the property, cannot defeat the right to enforce such trust or lien on the grounds that [the homestead exemption applies].

75 P.3d at 379 (citation omitted).

18. The Court further stated:

> The homestead exemption statute cannot be used as an instrument of fraud and imposition." [citation in footnote omitted] Public policy supports our application of an exception to homestead exemptions for victims of fraud or similar tortious conduct. An individual using fraudulently obtained funds to purchase real property should not be protected by the homestead exemption because the exemption's purpose is to provide protection to individuals who file the homestead exemption in good faith.

Id. The Nevada Supreme Court ultimately concluded in Maki that "[u]nder equitable lien principles, the homestead exemption is inapplicable when the proceeds used to purchase real

8

1  property can be traced directly to funds obtained through fraud or similar tortious conduct." Id.

2  19.  In sum, in Maki, the Court held that funds converted by a party—an intentional tort--and used to fund that party's purchase of a house could not be sheltered by the homestead exemption under equitable lien principles. No such intentional tort is alleged, must less proven by the FDIC-R in the case at hand, and thus no basis exists to impose some kind of amorphous equitable lien on Debtor's homestead to defeat an otherwise significant right under state law.

20.  Finally, although the Maki decision provides some limitation on Nevada exemptions, it is important to note as a general matter that "Nevada construes homestead laws liberally in favor of the debtor and his or her family." Van Meter v. Nilsson (In re Nilsson), 315 P.3d 966, 968 (Nev. 2013). "[T]he homestead exemption can only be extended or limited by the statutes or constitutional provision that created it." Savage v. Pierson, 157 P.3d 697, 699 (Nev. 2007). "[A]n abstract judgment lien under NRS 17.150 cannot attach to homestead property that is fully exempt, both at the time the judgment is recorded and at the time the property is sold." In re Contrevo, 153 P.3d 652 (Nev. 2007).

### E.  The Net Effect of the Transactions Did Not Prejudice the Bankruptcy Estate.

21.  Under sections 548 and 544(b) of the Bankruptcy Code, a fraudulent transfer action will lie only to avoid a "transfer of an interest of the debtor in property." This would be the equivalent of property of the estate pursuant to section 541 of the Bankruptcy Code, that is, property that would have belonged to the bankruptcy estate were it not for the transfer. Accordingly, courts looks to non-bankruptcy law—normally state law--to determine whether the debtor had an interest in the relevant property.

22.  The basic principal is that creditors are harmed or prejudiced only by a transfer of an interest in property that actually belonged to the debtor and that would have flowed into the bankruptcy estate. See In re Superior Stamp & Coin Co., Inc., 223 F.3d 1004 (9th Cir. 2000); see also Frontier Bank v. Brown (In re Northern Merchandise, Inc.), 371 F.3d 1056, 1059 (9th Cir. 2004) ("the primary focus of Section 548 is on the net effect of the transaction on the debtor's state and the funds available to unsecured creditors"). The central inquiry is whether the transfer diminished the estate, and if the estate is not diminished, the transfer is normally not avoidable.

1  See, e.g., In re Rine & Rine Auctioneers, Inc., 74 F.3d 854 (8th Cir. 1996) (holding that to be avoidable, a transfer must have placed something beyond the reach of creditors that could have been used to satisfy their claims).

23. For example, fully encumbered property is not deemed to involve an interest of the debtor, and the transfer of such property may not be set aside as a fraudulent transfer under sections 548 or 544(b) of the Bankruptcy Code. See In re Rambda, Inc., 437 F.3d 457 (5th Cir. 2006). To the extent that the property is encumbered with an unavoidable lien, the debtor does not have a beneficial interest in it, and it would not be available to general creditors. See In re Bean, 252 F.3d 113 (2d Cir. 2001); In re Mahendra, 131 F.3d 750 (8th Cir. 1997). Likewise, an allegedly fraudulent or concealment of fully encumbered property is not considered a basis for denying an individual debtor a discharge under section 727(a)(2) of the Bankruptcy Code because the debtor has no beneficial interest in the property, and such a transfer does not have any fraudulent effect, and regardless of the debtor's intentions. As such, the transfer could not prejudice a debtor's creditors in any way. See In re Lane, 166 B.R. 133 (Bankr. E.D. Mo. 1993); In re Hoffman, 70 B.R. 155 (W.D. Ark. 1986).

24. As a general rule, corporate forms are observed in bankruptcy unless there are clear state law grounds for piercing the corporate veil. See In re Foxmeyer Corp., 290 B.R. 229 (Bankr. D. Del. 2003); In re KZK Livestock, Inc., 221 B.R. 271 (Bankr. C.D. Ill. 1998). Consequently, courts have held that a fraudulent transfer of a corporation's assets may not be recovered for the benefit of a shareholder of the shareholder's estate. See In re Cassis, 220 B.R. 979 (N.D. Iowa 1998); In re Spring Grove Livestock Exch., Inc., 205 B.R. 149 (Bankr. D. Minn. 1997); In re BCP Mgmt., Inc., 320 B.R. 265 (Bankr. D. Del. 2005) (holding that the bankruptcy estate of a general partner could not bring an action in its own right to avoid transfers of funds of the limited partnership); see also In re Frank Funaro, Inc., 263 B.R. 892 (B.A.P. 8th Cir. 2001) (holding that the transfer of a shareholder's assets may not be set aside for the benefit of the corporation's bankruptcy estate).

25. Debtor appreciates that the situation could be different in the extraordinary case where there are sufficient state law grounds for disregarding the corporate form such as that the

10

debtor may not create a business entity that is merely an extension of the debtor and that has no purpose but to shield the debtor's assets and then cause that entity to make fraudulent transfers. See, e.g., Fleet Credit Corp. v. TML Bus Sales, Inc., 65 F.3d 119 (9th Cir. 1995); Stanton, 457 B.R. 91-92 (collecting cases); In re Turner, 345 B.R. 674 (Bankr. N.D. Cal. 2006); see also AE Restaurant Assocs., LLC v. Giampietro (In re Giampietro), 317 B.R. 841 (Bankr. D. Nev. 2004) (examining the requirements under Nevada law to pierce the corporate veil, and determining that the creditor had failed to establish its burden of proof of reliance). As applied in the case at hand, however, the FDIC-R has not alleged, much less proven such extraordinary allegations, and thus there is simply no basis to "collapse," impose "alter ego" liability, or "pierce the corporate veil" and making any of the entities liable for the debts of the individual debtors.

26. As noted in Stanton, "equitable principles have often collapsed transactions where one of the purposes of the interposition of parties has been to hinder, delay or defraud the debtor's creditors." 457 B.R. at 91-92 (citing Orr v. Kinderhill Corp., 991 F.2d 31, 35 (2d Cir. 1993) ("an allegedly fraudulent conveyance must be evaluated in context; '[w]here a transfer is only a step in a general plan, the plan 'must be viewed as a whole with all its composite implications.'" (quoting Buffum v. Peter Barceloux Co., 289 U.S. 227, 232 (1933) (emphasis added). But such equitable principles work both ways, and also can be used to prevent a forfeiture or unjust result through a fraudulent transfer. See, e.g., Northern Merchandise, Inc., 371 F.3d 1059 (reversing the avoidance as a fraudulent transfer of a grant of a security interest and payments that had been made to a lender pre-petition simply because the loan was made to the shareholders, instead of the debtor per se, including because the debtor obtain the benefit and use of the funds).

27. As applied in the case at hand, if the Court properly views the transactions at issue, and also in context and as a whole, all that really happened here was the use of funds by Debtor's spouse from an otherwise exempt asset and/or an asset that was not otherwise subject to execution or realization by the FDIC-R, and having those funds flow ever so briefly through Debtors' bank account as a mere conduit to the immediate funding of a homestead exemption so that Debtors could remain near ailing parents to care for them. The FDIC-R's attempt to lay claim to that money for the benefit of the bankruptcy estate and its creditors would be quite unjust to Debtors, would

work a forfeiture of their significant exemption right, and would grant the FDIC-R and other creditors of the estate a windfall. How was the FDIC-R, or indeed any other creditors of Debtors' estate really prejudiced as a practical matter by these transactions taken as a whole? Stated differently and applying the second required prong of section 522(o) of the Bankruptcy Code, how was the increase in Debtors' homestead "attributable to the disposition of nonexempt assets" when really they were not the Debtors' specific assets to begin with? The FDIC-R's arguments attempt to parce the transactions and take a "snapshot" in the middle of them and at the most advantageous time, when to do so does violence to and mischaracterizes the overall context and ultimate intent of the transactions taken as a whole. The actual net effect of the transactions taken together and viewed in context did not take property that was otherwise readily available to creditors like the FDIC-R and place it outside their reach. Debtors' ability to claim one of the most important exemptions, indeed an exemption guaranteed to them by the Nevada Constitution, should not be so easily defeated by mere happenstance and technicality.

F.    **Debtor Was an Innocent Non-Participant and is Entitled to her Homestead.**

28.    Finally, the evidence will show that Debtor is an innocent spouse who had absolutely no knowledge of or participation in any of the transactions of which the FDIC-R complains, and thus has a right to assert her own homestead exemption under applicable Nevada law. To the extent necessary, the Court should sever, bifurcate, or at least not order the Debtors' cases to be jointly administered pursuant to Bankruptcy Rule 1015(b) to ensure that Debtor retains her homestead exemption.

29.    In the final alternative, and only if the Court somehow determines that the homestead exemption should not be preserved as a result of her spouse's conduct, Debtor should receive at least some just compensation, as an innocent, non-participating spouse, for the exemptible one-half undivided interest in the community homestead. See In re Am. Bus. Machines, Inc., 6 B.R. 166 (Bankr. D. Nev. 1980) (providing for the equitable division of proceeds already in bankruptcy trustee's hands from the sale of homestead property to an innocent non-taxpayer spouse from the claim of the IRS).

. . .

WHEREFORE, Debtor requests that the Court overrule the FDIC-R's Objection to her homestead exemption, and grant her such other and further relief as is just and proper.

Dated: April 28, 2014.

                    LARSON & ZIRZOW, LLC

By: /s/ _____
ZACHARIAH LARSON, ESQ.
Nevada Bar No. 7787
MATTHEW C. ZIRZOW, ESQ.
Nevada Bar No. 7222
810 S. Casino Center Blvd. # 101
Las Vegas, Nevada 89101

Attorneys for Debtor, Amy Tarkanian